# Watsontown Car Manufacturing Company *versus* Elmsport Lumber Company.

1. Where one person enters into a contract under seal to furnish goods of a certain kind and quality therein specified to another, parol evidence is inadmissible to show that the vendee has, a short time before the execution of the contract, inspected particular goods in the vendor's possession, and that these goods are the particular ones referred to in the contract.

2. Where a general verdict is rendered subject to a point reserved, the question thus reserved must be distinctly stated, and the facts on which it arises must either be admitted on the record or found by the jury.

February 14th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lycoming county:* Of January Term 1882, No. 128.

Covenant, by William McLees .et al., doing business as the Elmsport Lumber Company, against John H. Goodman and others, doing business as the Watsontown Car Manufacturing Company. The narr. declared on an agreement under seal dated April 22d 1873, whereby the plaintiffs covenanted to furnish to the defendants "oak lumber of the size and quantity ordered by said Watsontown Car Company from time to time, and fitted for the use of said car company, the quality to be such that it will pass inspection by the foreman of said car company, the said parties of the first part [the plaintiffs] to furnish said lumber as fast as will be required by said car company, according to bills furnished at either Watsontown or Allenwood, as aforesaid directed by the said car company, the said parties agree to have their mill running and ready to cut by the 15th of June 1873, and the said car company agrees and shall furnish bills to keep the mill running from said June 15th until said parties of the first part have cut their timber, amount-

[Watsontown Car Manufacturing Co. *v.* Elmsport Lumber Co.]

ing to about 800,000 feet." And the said car company agreed to pay for said lumber as therein specified. The narr. averred a breach of said covenant on the part of the defendants, in that they refused to furnish bills. for and receive said lumber from the plaintiffs, with the exception of about 149,000 feet out of the 800,000 feet contracted for.

Pleas, covenants performed absque hoc, former recovery, and set off.

On the trial, before CUMMIN, P. J., the plaintiffs, having put in evidence the contract, called Elias Neyhart, one of the plaintiffs, and asked him this question : Q. State the interview that you had between Abram Goodman and J. M. Linn, two of the defendants, in Elmsport, in the spring of 1873, preparatory to making this contract ? This for the purpose of showing that these defendants saw this particular and specific lot of logs, inspected them, and that they were the logs stipulated to be bought in the contract ; and to be followed by proof that within a few days after, and in pursuance thereof, the contract now in evidence was drawn.

Objected to, because (1) the evidence, if admitted, would add to the terms of the written contract between the parties, without showing as a foundation for this change any fraud or mistake in the execution of the contract; (2) it would contradict the contract, and set up a distinct contract between the parties ; (3) it would destroy the provision of the contract that plaintiffs should furnish lumber of the size and quality ordered by the car company and fit for their use, the quality to be such as will pass inspection by their foreman ; (4) because the narr. declares upon the written covenant alone ; (5) because the evidence is irrelevant.

BY THE COURT.—I think this is admissible to show that these parties saw this particular lot of logs—the fact that they knew what they were contracting about. Wherever it comes to any point where it tends to contradict the contract, we think it is not at present admissible. Objections overruled, and evidence admitted with the reservation as stated ; exception.

This witness, and others of the plaintiffs (under similar objection and exception), testified that they had a large lot of oak timber cut and lying on a piece of land near the public road at Elmsport ; that two of the defendants came to plaintiffs and asked if that timber was sold ; the reply was : " No, but we have an offer for it." A few days later they proposed to buy that specific lot of logs at a certain price, which was accepted, and the contract was drawn. The logs were cut in lengths at the time of the sale, and the lumber therefore could not be cut longer than the logs, the longest of which were twenty-four feet.

[Watsontown Car Manufacturing Co. v. Elmsport Lumber Co.]

The evidence on the part of defendants showed that they demanded and received lumber under the contract until some time in July 1874, and they then rescinded the contract because the plaintiffs failed to deliver "long timbers," as called for by defendants; and because one of the plaintiffs stated that they could not furnish the long stuff and never intended to. It appeared that defendants had demanded some timbers as long as thirty-one, thirty-two and thirty-four feet.

The defendants offered in evidence, under their plea of former recovery, the record of a suit between these same plaintiffs and defendants, in the Common Pleas of Union county, wherein the plaintiffs recovered judgment for the amount of timber actually furnished by them, and accepted by the defendants, which judgment was paid and satisfied before this suit was brought.

Objected to, because the cause of action in that suit, viz., for lumber sold and delivered, is different from the cause of action in this suit, viz., breach of covenant to accept other lumber.

By the Court.—We will try the case on its merits, and reserve the point.—Objections overruled, and evidence admitted, the court reserving the right to decide upon the effect of the same hereafter. Exception.

The defendants submitted, inter alia, the following points:

6. If the jury believe that the plaintiffs refused to deliver the long timber, or any other lengths or sizes, for car purposes, as called for in bills furnished by the defendants in pursuance of the contract, in consequence of which, the defendants refused to furnish any more bills and to receive any more timber, and the plaintiffs then brought suit in the Court of Common Pleas of Union county, and recovered for what they had previously delivered under the contract; then the plaintiffs are estopped by such recovery, and, therefore, cannot sustain this action against the defendants for not recovering the balance of the 800,000 feet, as they were bound to declare, and could have recovered for all their various claims and damages growing out of any violation of the contract on the part of defendants.

*Answer.* The sixth point relates to a matter which we consider as a matter of law, and will be reserved by the court for further consideration, and your verdict will be rendered subject to the opinion of the court on this point, as we may hereafter view it.

8. That under all the evidence in the case, the record of the suit between the same parties, from the Court of Common Pleas of Union county, is a bar to the recovery of the plaintiffs in this suit.

*Answer.* The eighth point is a question of law, which will be reserved by the court for further consideration, and your

[Watsontown Car Manufacturing Co. v. Elmsport Lumber Co.]

verdict will be rendered subject to the opinion of the court, which may be hereafter delivered on that point. It is purely a question of law.

Verdict for plaintiffs for $3,059.19, subject to the points reserved. The defendants moved in arrest of judgment, and for a new trial. The court denied the motion, and entered judgment for the plaintiffs upon the verdict and points reserved. The defendants thereupon took this writ of error, assigning for error, (1) the overruling of their objections to the parol evidence of the plaintiffs, as to the specific logs alleged to have been contracted for; (2 and 3) the answers of the court to their sixth and eighth points, as above; and the entry of judgment for plaintiffs on the reserved points.

*R. P. Allen* and *Oscar Foust*, for the plaintiffs in error.— In the absence of allegations of fraud or mistake in the execution of a sealed and written contract, parol evidence is not admissible to add to, vary or contradict it. The parties to a written contract may often have different impressions regarding its effect, but the thoughts of one cannot be proved to bind the other: Spencer *v.* Colt, 7 W. N. C. 333; Irwin *v.* Shoemaker, 8 W. & S. 75; Lancaster Bank *v.* Smith, 12 P. F. S. 47; Martin *v.* Berens, 17 P. F. S. 459; Callen *v.* Lukens, 7 W. N. C. 28; Caley *v.* Hoopes, 6 W. N. C. 326. The narr. being on the sealed instrument, parol evidence of a different contract could not be introduced without an amendment: Brown *v.* Gilmore, 11 Norris 40.

It is error to reserve a point of law on the trial without a finding of facts by the jury, or a statement agreed upon, so that they may appear of record: Verrier *v.* Guillou, 1 Out. 63; Commonwealth *v.* McDowell, 6 W. N. C. 73; Miller *v.* Bedford, 6 W. N. C. 144.

*John J. Metzger* and *H. C. McCormick*, for the defendants in error.—The parol evidence objected to was not admitted to vary or contradict the written instrument, but for the limited purpose of showing the independent fact that the parties knew what they were contracting about. In overruling the objection the court expressly said: "Whenever it comes to any point where it tends to contradict the contract, we think it inadmissible." The effect of the evidence was merely to identify the 800,000 feet of timber which the defendants had covenanted to purchase. This contravenes no rule of evidence. The sixth and eighth points of the defendants involved the effect of the record of the suit in Union county, as a bar to this action, and as this was a question of law for the court, the points were properly reserved. The record of the Union county suit fur-

nished the facts upon which the reservation was made, and no exception having been taken to the form of the reservation, it is too late now to raise the objection that the defendant's sixth and eighth points were reserved and not answered.

Mr. Justice GREEN delivered the opinion of the court, March 13th 1882.

The contract between these parties was in writing and under seal. By its terms, the lumber company agreed to saw and deliver to the car company " oak lumber of the size and quantity ordered by the said car company from time to time, and fitted for the use of said car company, the quality to be such that it will pass inspection by the foreman of said car company, the said parties of the first part to furnish said lumber as fast as will be required by said car company, according to bills furnished at either Watsontown or Allenwood, as aforesaid directed by the said car company."

This agreement is perfectly plain and simple in its terms, and requires no help from extrinsic testimony to understand its meaning. The lumber company was not to take any particular lumber, but only oak lumber generally, which, however, was to be of the size and quantity ordered by it. It was to be fitted for the use of the car company, and was to be furnished according to bills sent by the car company. On the trial, the plaintiffs offered to prove, by one of their number, a conversation between him and two of the defendants some time before the execution of the written contract, at Elmsport, where there was a lot of logs belonging to the plaintiffs. The purpose of the offer was to show that the defendants saw this particular " lot of logs, inspected them, and that they were the logs stipulated to be bought in the contract." This offer was objected to on the ground that it would add to the terms of the contract, that it would contradict the contract, and that it would destroy one of the provisions of the contract. The court admitted the evidence for the purpose of showing that the defendants saw this particular lot of logs, and that they knew what they were contracting about. We think this was error. It was unnecessary to show that the defendants had seen any particular lot of logs before the written contract was made, simply because the contract was not made for that or any other particular lot. Such evidence could only tend to create a false issue, and thereby mislead the jury. The counsel for the car company allege now that it was argued to the jury that the contract was made for this very lot of logs, and because the car company did not take them, the lumber company claimed and recovered heavy damages. As we find the same argument now made in the paper book of counsel for the lumber company, it may well be that

3 OUTERBRIDGE.—39

the complaint is not made without cause. However that may be, as we can see no proper purpose that could be served by the admission of this testimony, we think it should have been rejected. It is true, the testimony, when admitted, did not develop any new terms of the agreement, but it did go to the point of identification, which was the purpose for which the court admitted it. As there was nothing to be identified under the language of the contract in suit, the testimony offered and given might be quite harmful to the case of the defendants, in causing the jury to believe that they had agreed to purchase this particular lot of logs. This becomes more apparent when it is discovered that the defendants alleged, in defence, that they could not get such lumber as they required for the use of cars, and as ordered by their bills. They claimed that they required and ordered lengths which could not be found amongst these logs, and that this was one of their reasons for not taking them.

We think also, that the sixth point of the defendants should have been definitely answered. Of course the court was bound by the facts stated hypothetically in the point, and on these facts the conclusion stated was apparently sound. The question raised by the point was as to the effect of the former action on the present right of recovery, on the supposition that when the action was brought, the plaintiffs had refused to deliver the long timber or other lengths called for by the bills, and the defendants had refused to furnish any more bills and to receive any more timber. These facts being true, the plaintiffs' right of action was thereupon complete before the first action was brought, and we do not think it was competent for them to split up their cause of action into several parts and bring separate actions for each.

Of course, we do not assume to decide the question whether the former recovery was a bar to the present action or not. We are dealing only with the point as presented and the action of the court below in relation to it. In reality, the point was not answered at all. The court replied to it, by saying, that it related to a matter which they considered as a matter of law, and which would be reserved. But no designated legal question was reserved, and no finding of fact by the jury was submitted, as the basis for any reserved question. The same remarks are true of the answer to the eighth point of the defendants. In Ferguson *v.* Wright, 11 P. F. S. on p. 262, we said: " Every reservation of a question should place distinctly upon the record what the point is which is reserved, and the state of facts out of which it arises. This is necessary to enable the party to except to it and to have it reviewed." And in Wilson *v.* Steamboat, 1 Cas. on p. 319: "In every case where a general verdict is given subject to a point reserved, the question of law

[Pollman v. Morgester.]

thus reserved must be stated, and the facts on which it arises must be either admitted on the record or found by the jury." The remarks of BLACK, J., in the latter case are quite applicable to the present. Tested by this rule, it is apparent there was no proper reservation of any question for the subsequent action of the court, and the point remained unanswered.

For these reasons, we are of opinion, that the case must be reversed on the first, second and third assignments of error.

> Judgment reversed and venire facias de novo awarded.